I respectfully dissent from that portion of the opinion regarding visitation. This court generally affords great deference to a trial court regarding its discretion in determining matters of visitation; however, that discretion is not unbridled. The trial court must consider the facts and circumstances of each particular situation. Pelanne v. Pelanne,572 So.2d 484 (Ala.Civ.App. 1990). Furthermore, the foremost consideration must always be the best interests and welfare of the child. Durham v. Heck, 479 So.2d 1292 (Ala.Civ.App. 1985).
Although some visitation for the father in this case may be appropriate, I believe that sudden, unsupervised, lengthy visitation with this father is so inappropriate as to amount to an abuse of discretion. Close review of the record reveals unique facts in this case which make the visitation ordered by the trial court inappropriate, and indicates that the best interests and welfare of this child may not have been the foremost consideration.
It appears of record that the father of this child was a teenager when the child was born; that the father and the mother were not married until the child was approximately two months old; that the father's name does not appear on the child's birth certificate; that the father denied paternity and requested blood tests; that the father initially showed no interest in the child; and that the father previously attempted to terminate his parental rights. It appears that although the trial court refused the father's request to terminate his parental rights and ordered that he pay child support, there was no visitation requested or ordered at that time. The father testified that he was represented by a lawyer throughout the divorce and the termination proceedings. It was not until the mother sought the assistance of the court in attempting to collect the court-ordered child support from him that the father sought visitation for the first time.
The record discloses that the mother has remarried, and that her new husband desires to adopt the child. The mother's new husband is in the military service, and the mother *Page 441 
and the child have moved to Germany to be with him. The father testified that he had told the mother previously that he would sign adoption papers if the mother had them prepared.
There is evidence in the record that the father has some problems involving alcohol abuse, that he has no driver's license because of drinking and driving violations, that he lives with his father in a house trailer, and that he has an unstable employment history. The record reveals that the father was on probation at the time of the hearings. The paternal grandfather testified that the mother brought the child to visit him on several occasions. There was testimony from the mother and her husband that they feared for the child's safety if the child was left alone with the father because of the father's irresponsible behavior involving, illegal drugs, drinking, and driving. The father testified that he had been provided visitation opportunities at the initiation of the mother and her new husband, but had failed to exercise same consistently. There is also evidence that the father failed to carry through with other scheduled visitations. Further undisputed testimony indicated that the child does not even know who his father is.
I agree that this child and the father should be afforded an opportunity to establish a parent-child relationship; however, it appears to me that the abrupt and extensive visitation ordered constitutes an abuse of discretion. I do not believe that it is in the best interest of this three-year-old child to be suddenly subjected to weekend and extensive intercontinental visits with a parent with whom he has had almost no prior contact, and who is virtually a stranger to the child, for whatever reason. Additionally, the evidence is undisputed that the father's substance abuse problems have contributed to several car crashes and that the child's safety may be jeopardized if he is left unsupervised with the father. The record discloses that the father expressed no interest in visitation until the mother sought to enforce his court-ordered child support obligation. The ordered visitation subjects a small child to a long, transoceanic flight only to be met at the airport by a virtual stranger. Although it may be in the child's best interest to be allowed an opportunity to get to know and visit with the father, subjecting a three-year-old child to extended, lenient visitation with a person with whom he has no relationship and no knowledge that he is his father, and with whom he may not be safe, in my opinion, overlooks the best interests and welfare of the child.