# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**06-1497**

**KENYETTA M. BROOKS, ET AL.**

**VERSUS**

**CHRISTUS HEALTH SOUTHWESTERN LOUISIANA D/B/A CHRISTUS ST. PATRICK HOSPITAL OF LAKE CHARLES, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-4923
HONORABLE KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

**Daniel E. Broussard, Jr.**
**Broussard, Bolton, Halcomb & Vizzier**
**P.O. Box 1311**
**Alexandria, LA 71309-1311**
**Counsel for Plaintiffs-Appellants:**
     **Kenyetta M. Brooks, et al.**

**Benjamin J. Guilbeau, Jr.**
**Stockwell, Sievert, Viccellio,**
**Clements & Shaddock, LLP**
**P.O. Box 2900**
**Lake Charles, LA 70602**
**Counsel for Defendant-Appellee:**
     **Christus Health Southwestern Louisiana**

**PAINTER, Judge.**

In this medical malpractice action, Plaintiffs, Kenyetta M. Brooks and Derrick D. Brooks, appeal the trial court's grant of summary judgment in favor of Defendant, Christus Health Southwestern Louisiana d/b/a Christus St. Patrick Hospital of Lake Charles (St. Patrick Hospital). The *res nova* issue presented by this appeal is whether or not a hospital has a duty to perform an autopsy.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of June 20, 2000, thirty-nine-year-old Nancy Brooks underwent bilateral breast reduction surgery performed by Dr. E. Clyde Smoot at St. Patrick Hospital. Following the surgery, which was performed without complications, Ms. Brooks was admitted for an overnight stay. By noon on the 20th, Ms. Brooks was responsive and able to walk. However, at 1:53 p.m., Nurse K. Schexnaider found Ms. Brooks to be unresponsive. According to the nurses' notes, Ms. Brooks was observed to be "breathing loudly with heavy tongue (snoring-like) no responsive [sic] to verbal or painful stimuli . . . noticed periods or apnea." A code blue was called at 1:56 p.m., but efforts to revive Ms. Brooks were unsuccessful. Ms. Brooks was pronounced dead at 2:25 p.m. The coroner arrived at 3:40 p.m. and determined that an autopsy was not necessary. The stated cause of Ms. Brooks' death was ischemic cardiac event.

According to the medical records, following Ms. Brooks' death, Dr. Smoot recommended that an autopsy be performed. Ms. Brooks' daughter, Kenyetta, requested that said autopsy be performed. No autopsy was performed. Kenyetta claimed, in an affidavit, that she insisted an autopsy be performed but was told that an advanced payment of $2,000.00 would be necessary. She further averred that

1

neither she nor any member of her family had sufficient funds to pay for the autopsy but that her mother was covered by Medicare and Medicaid.

Plaintiffs, the surviving children of Ms. Brooks, instituted a medical malpractice action against both Dr. Smoot and St. Patrick Hospital. The failure to perform an autopsy was not at issue before the medical review panel. The medical review panel found in favor of both Defendants, specifically finding that the patient was treated appropriately in the pre-operative, intra-operative, and post-operative periods. The panel noted that "her controlled hypertension, her obesity, and her managed depression were not contra-indications for the surgery." The panel also found that the code was managed appropriately by the physicians and the staff of St. Patrick Hospital.

Following the panel opinion, Plaintiffs filed the instant suit. Both Dr. Smoot and St. Patrick Hospital filed motions for summary judgment based on the panel opinion as well as the assertion that Plaintiffs failed to produce any expert medical testimony to support their allegations that Defendants breached the applicable standards of care. In opposition to the motions for summary judgment, Plaintiffs argued that the doctrine of *res ipsa loquitur* should apply and that the hospital had a duty to perform an autopsy. Plaintiffs argued that, without an autopsy, the exact cause of Ms. Brooks' death could not be determined. The trial court found that *res ipsa* did not apply and granted the motion for summary judgment in favor of Dr. Smoot. With respect to St. Patrick Hospital's motion for summary judgment, the trial court re-fixed the hearing to allow additional time for research on the issue of whether the hospital had a duty to perform an autopsy. Following a hearing, the trial court granted St. Patrick Hospital's motion for summary judgment and found that there was no burden on the hospital to provide an autopsy. Plaintiffs now appeal the grant

2

of summary judgment in favor of St. Patrick Hospital but do not appeal the grant of summary judgment in favor of Dr. Smoot.

**DISCUSSION**

*Summary Judgment*

Following well-established jurisprudence, we review this summary judgment *de novo*, using the same criteria as the trial court, in order to determine whether summary judgment is appropriate. *Butler v. DePuy*, 04-101, (La. App. 3 Cir. 6/9/04), 876 So.2d 259 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730). Therefore, we must determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). With respect to the burden of proof in a motion for summary judgment, we explained in *Butler*, 876 So.2d at 261:

> The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but rather he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id*.

In deciding this matter, we must first consider the applicable burden of proof for a plaintiff in a medical malpractice case, which is found in La.R.S. 9:2794. That statute states that a plaintiff must establish the following elements by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached; however, there is an exception to this general rule in cases where the

3

negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *See Butler*, 876 So.2d 259 and *Pfiffner v. Correa*, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228. Plaintiffs rely on *Pfiffner* for the proposition that they need no expert testimony to establish their case. In this case, we find that Plaintiffs would be required to produce expert testimony to establish the applicable standard of care and a breach thereof. While it has been recognized that a plaintiff can establish these things through the testimony of the defendant's expert witness, this option is not available to Plaintiffs because the expert testimony, in the form of the panel opinion [which is admissible as expert evidence on a motion for summary judgment pursuant to *Richoux v. Tulane Med. Ctr*., 617 So.2d 13 (La.App. 4 Cir.1993)], indicated that there was no breach of the applicable standards of care by either the doctor or the hospital in this case. *See Thomas*, 833 So.2d 548 (citing *Sandifer v. Wise*, 00-293, 00-294 (La.App. 4 Cir. 2/7/01), 780 So.2d 1099). Furthermore, the panel did not address the question of whether an autopsy should have been performed because the issue was not presented to it.

St. Patrick Hospital met its initial burden of proof on its motion for summary judgment. The panel opinion showed that there is an absence of factual support for Plaintiffs' contention that there was a breach of the standard of care, which is an essential element of Plaintiffs' claim. The burden thus shifted to Plaintiffs to "sufficiently establish the *existence of proof* of an essential element of [their] claim" which they "bear the burden of proving at trial." *Alex v. Dr. X*, 96-1196, p. 4 (La.App. 3 Cir. 3/5/97), 692 So.2d 499, 502 (citing *Short v. Giffin*, 96-0361 (La.App. 4 Cir. 8/21/96), 682 So.2d 249, *writ denied* 96-3063 (La. 3/7/97), 689 So.2d 1372). This Plaintiffs failed to do.

4

Plaintiffs allege various acts of negligence on the part of St. Patrick Hospital with respect to the post-operative care received by Ms. Brooks. However, Plaintiffs failed to present expert testimony to establish the standard of care and that there was a breach thereof by St. Patrick Hospital. Plaintiffs argue that they are prevented from meeting the third prong of their burden of proof (that there was a causal connection between the breach and the resulting injury) by St. Patrick Hospital's actions in not performing an autopsy. Plaintiffs attempt to have us consider the third prong before they have met the first two. Plaintiffs would have us impose a duty on St. Patrick Hospital relative to the performance of an autopsy. Plaintiffs argue that Medicare regulations state that the medical staff of a hospital should make an "attempt" to secure autopsies in cases of "unusual deaths and of medical-legal and educational interest." 42 CFR 482.22. They further assert that Medicare pays for autopsies "indirectly." The crux of Plaintiffs' argument is that the denial of their request for an autopsy deprives them of an opportunity to show that St. Patrick Hospital's conduct contributed to Ms. Brooks' death such that they have lost the chance to prove their claim.

While we are sympathetic to Plaintiffs' plight, they simply have not met their burden of proof. They have provided no expert testimony relative to the standard of care and have presented no compelling authority for us to impose the duty they now seek. To the contrary, La.R.S. 33:1563 places the duty to perform autopsies squarely on the coroner alone.[1] In this case, the coroner was present shortly after Ms. Brooks' death and made the determination, as he is required by statute to do, that no autopsy was necessary. We also note that the allegation that St. Patrick Hospital denied

---

[1] La.R.S. 33:1563(B)(1) provides that the coroner has discretion in performing or causing autopsies to be performed except in cases where there is a reasonable probability that the violation of a criminal statute has contributed to the death. In those cases, autopsies are mandatory.

5

Plaintiffs' request for an autopsy was not presented to the medical review panel.[2]

While Plaintiffs have not termed it as such and have not made such an allegation in their petition, this is essentially a spoliation of evidence claim[3] which Plaintiffs have not properly presented and are unable to assert as a bar to Defendant's properly supported motion for summary judgment.

## DECREE

For all of the foregoing reasons, we decline to impose a duty to perform an autopsy on the hospital in this case. We agree with the trial court that there are no genuine issues of material fact in this case and affirm the summary judgment granted in favor of St. Patrick Hospital. All costs of this appeal are assessed to Plaintiffs-Appellants, Kenyetta M. Brooks and Derrick D. Brooks.

**AFFIRMED.**

---

[2]We also note that the court in *Richardson v. Advanced Cardiovascular Systems, Inc.*, 865 F.Supp. 1210 (E.D.La., 1994) found that allegations that the defendant hospital intentionally conspired with the surgeon to cover up any negligence and intentionally interfered with the performance of an autopsy contracted for by Plaintiffs were "fair grist" for a medical review panel and dismissed the claims as premature pending review by a medical review panel.

[3]"The theory of 'spoliation of evidence' refers to an intentional destruction of evidence for purpose of depriving opposing parties of its use. A plaintiff asserting a state law tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence. Allegations of negligent conduct are insufficient." *Desselle v. Jefferson Parish Hosp. Dist. No. 2*, 04-455, p. 16 (La.App. 5 Cir. 10/12/04), 887 So.2d 524, 534 (citations omitted).